# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CR-12-00077-001-HE |
| | ) | |
| AMAR NATH BHANDARY, M.D., | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

Defendant previously filed, through counsel David P. Henry and Daniel J. Gamino, a motion to suppress [Doc. #37] and three motions to dismiss [Doc. Nos. 39, 40, and 41]. To one degree or another, all the motions were based on allegations of government misconduct in the investigation and prosecution of this case. The particular allegations of misconduct were extraordinarily serious. Some of them, if untrue, are libelous and would be actionable in any other context. Given the nature of the allegations and the court's exposure to certain of the circumstances related to them,[1] the court directed defense counsel to be prepared to address, at the hearing on the motions, "whether there are or were reasonable grounds, based on the standards for attorney conduct, for defense counsel to make certain of the particular allegations included in the referenced motions" [Doc. #58 at 2].

The motions hearing was held on January 3, 2013. At the conclusion of the hearing, all motions were denied based on the court's determination that no government misconduct had been shown, much less the sort of egregious misconduct that might have warranted the

---

[1]*See Order Denying Motion to Amend Conditions of Release, September 24, 2012 [Doc. #34].*

relief sought in the motions. The court also noted the outrageous and unsupported nature of the misconduct allegations made by counsel and reserved for later determination the question of whether sanctions were warranted in light of the allegations.

As proceedings in this court are now completed,[2] the court concludes it is appropriate to determine the sanctions question and that, under the circumstances existing here, counsel David P. Henry, Esq. and Daniel J. Gamino, Esq. should be formally reprimanded for their professional misconduct in this case.

The court fully appreciates the duty of counsel to represent one's client vigorously. Often that will involve counsel advocating positions based largely or wholly on the assurances of the client, without the benefit of significant investigation or independent corroboration. Sometimes the best defense is a strong offense. But the duty to represent a client vigorously does not extend to deliberate misrepresentations of the facts in circumstances where counsel knew, or with reasonable inquiry should have known, of the true facts. *See* Okla. Rules of Prof'l Conduct R. 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous . . . .").[3] That is what occurred here.

The following discussion sets out in some detail the basis for the court's conclusion

---

[2]*The case proceeded to trial in April, 2013. Defendant was represented at trial by different counsel and nothing in this order is directed to trial counsel, whose performance was skillful and professional in every respect.*

[3]*The District Court for the Western District of Oklahoma has adopted the Oklahoma Rules of Professional Conduct as the standard governing attorney conduct. See LCvR83.6(b).*

2

that government misconduct was not established. More important for present purposes, it also shows the absence of a reasonable basis for many of the outrageous claims made by counsel.

Of particular concern to the court is the extreme nature and extent of many of the allegations made by these defense attorneys. The most outrageous claim lies in the summary by defense counsel of their allegations of government misconduct: "The actions of the Government and Dr. Bhandary's 'Investigation' have been in the utmost bad faith, bordering if not actually crossing over into criminal conspiracy, and at the very least attempted involuntary manslaughter if not attempted murder of Dr. Bhandary . . . ." [Doc. #41 at 19]. The court can only assume that these preposterous claims of manslaughter and murder derive from defense counsel's equally preposterous claims that Dr. Bhandary was tortured and starved during his imprisonment in Germany [*See* Doc. #39 at 16, 20-21]. There was absolutely no evidence that defendant was tortured or starved in Germany. The evidence instead established that defendant was checked on by consular officials, that he had access to the prison commissary to buy additional food, and that he could even store food in his room. The government presented evidence that Dr. Bhandary told U.S. Marshals during his extradition back to the United States that he was not mistreated, and that he appeared to weigh more at that time than on the date of the hearing. These claims by defense counsel were completely unwarranted and abusive.

Defense counsel also accused the government of committing "65 violations of US Criminal Codes, with innumerable violations yet to be determined by Court [sic]" [Doc. Nos.

39 at 27; 40 at 3, 4; 41 at 22]. These "violations" include criminal conspiracy, perjury, and conspiracy against rights, among others. It is unnecessary to detail all 65 violations asserted by defense counsel, as no evidence was presented to the court that provided even an arguable basis for any such charges.

Another allegation completely unsupported by the evidence was that DEA Investigator Lawson and FBI Agent Andrew Farabow were abusive and aggressive in their interaction with Dr. Bhandary and his staff on December 16, 2009 [Doc. #40 at 13]. Defense counsel argued, "The <u>pattern</u> of unlawful behavior and intimidation, including calling Dr. Bhandary a 'drug dealer,' hostility and belligerence is documented in statements from Office Staff . . ." [Doc. #40 at 11 (emphasis in original)]. Further, counsel emphasized that "Office staff was to [sic] witness similar belligerent behavior" [Doc. #40 at 19]. Defense counsel even admitted as an exhibit a letter from attorney Daniel Gamino to U.S. Attorney Sanford Coats which contains even more outrageous allegations in this regard: "Dr. Bhandary's staff members were uniformly appalled and absolutely intimidated by the threats and belligerent actions of the federal officers. It was a scary experience for all. None had ever seen law enforcement personnel so out of control and full of rage" [Def. Ex. #41 at 3].

For support, counsel pointed to a written statement made by office assistant Chasidy N. Nathan. That statement does not support the allegations made by defense counsel. Ms. Nathan's statement says only, "Dr. Bhandary said that the agents treated him very badly and told him that he was a dope dealer and a drug pusher" [Doc. #40-6 at 1]. This statement represents only that Dr. Bhandary said they treated him badly, not that either member of the

4

office staff witnessed "belligerent behavior" by the agents. Furthermore, at the hearing, both Chasidy Nathan and another member of the staff, Kim Horton, testified that the agents were not rude to them at all and neither heard the agents call Dr. Bhandary a drug dealer or drug pusher. The testimony of these two individuals was available to the defense attorneys well before they made such extreme and unsupported allegations, and it is clear that there was no reasonable basis to make such accusations in pleadings or testimony before the court.

Other accusations by defense counsel were equally unfounded:

Concealment of Files

Defense counsel claimed that the government concealed files that were seized from defendant's office on December 16, 2009. Counsel asserted, "No copies of any files so concealed expertly in utmost bad-faith, or to be used in the indictment, were made available until months after the indictment itself, until approximately mid-July 2012, despite multiple requests by the Doctor and his then-attorney Mack Martin for all these files or copies, beginning with the letter from then-attorney Mack Martin [sic] January 5th 2010" [Doc. #40 at 16 (emphasis in original)]. As evidence, counsel presented a report of investigation prepared by Investigator Lawson. That report stated, "On 01/15/10, at the OCDO, copies of patient records obtained under the above listed subpoena were provided to BHANDARY's attorney, Mack Martin" [Def. Ex. #20 at BHA_0033]. Counsel claimed this was a "deceptive report" which made a "false claim" that copies of all files listed on the subpoena were provided to former defense counsel, when only 64 files out of the 140 seized were provided at that time [Doc. #40 at 17]. However, Investigator Lawson's report does not state that all

5

were returned. It can certainly be read as stating that the files returned were among those seized, not all of them. But even if true, this at most represents a discovery dispute, not a basis for dismissal.

Defense counsel contended that the remainder of these files were unlawfully concealed from Dr. Bhandary. However, at the hearing, government counsel presented evidence—by way of an internal memo documenting a telephone conference that occurred in August 2012—that it had informed defense counsel that the files were available to be examined and copied at any time. Defense counsel never seriously contested this evidence. This does not remotely support an inference of "egregious misconduct" such as would arguably support dismissal.

<u>Violation of Subpoena</u>

Counsel also asserted government misconduct based on the fact that the agents seized originals of the 82 files listed on the subpoena, instead of allowing Dr. Bhandary to bring copies of the files to the Grand Jury at a later date [Doc. #40 at 16, 19-20]. However, the subpoena explicitly states that "[f]ull compliance with this subpoena may be accomplished by delivery of the above documents to an authorized representative of the DEA or by mailing said documents by certified mail . . . to: [Investigator Gary Lawson]" [Def. Ex. #21]. Furthermore, defense counsel submitted a document at the hearing from prior defense counsel Mack Martin which states: "[I]t is my understanding that law enforcement agents were given originals of patient files on the 16th to comply with the January 5, 2010 appearance. It is my understanding that because of his compliance, Dr. Bhandary or the

6

custodian of the records will be excused from appearance on January 5, 2010" [Def. Ex. #25]. The court found that Dr. Bhandary consented to the seizure of these files, and there is no basis to support a claim of outrageous government misconduct, much less misconduct, based on its receipt of the files.

Absence of Written Consent

Defense counsel also based many of their assertions on the fact that neither Dr. Bhandary nor his staff signed a receipt evidencing consent to seize the files on December 16, 2009 [*See* Doc. #40 at 14, 18]. Defense counsel apparently interpreted the fact that Dr. Bhandary's staff signed a receipt for a seizure executed pursuant to a later search warrant to mean that a seizure is not valid without written consent. That is clearly not supported by the law and provides no support for defense counsel's claims of outrageous government misconduct.

Perjury by Officer Puckett

One of the most outrageous claims in defendant's briefs involved so-called "perjury" by Officer Puckett [*See* Doc. Nos. 39 at 1-2; 41 at 12-13]. Counsel claimed that "with deliberate and reckless disregard for the truth, Mr. Puckett was to [sic] create fictious aircraft manifests that evidenced fictitious 'boarding passes' in the affidavit, all in order to perpetuate and cement, in the eyes of all concerned, falsehoods of Dr. Bhandary's 'fugitive' status . . . ." *Id.* Counsel pointed to language in an affidavit made by Puckett for a search warrant which stated that a search of Department of Homeland Security records and aircraft manifest "found that BHANDARY obtained a boarding pass to return on 02/08/12 but did not board

7

the aircraft" [Def. Ex. #26 at BHA_0683]. Counsel claimed that this constituted perjury because Dr. Bhandary rescheduled his flight on February 6, 2012, was nowhere near the airport on February 8, 2012, and therefore could not have obtained a boarding pass on that date. There was zero indication of Puckett creating a manifest or any other such document. It is clear to the court, especially in light of Officer Puckett's testimony, that this was a simple mistake of language, and that Puckett meant that Dr. Bhandary had a "reservation" or a "ticket" to return on February 8, 2012. When the court further questioned defense counsel about whether they believed a mistake in an affidavit constituted perjury, counsel insisted that a series of mistakes, including the one at issue, did constitute government misconduct and that Officer Puckett had a duty to make sure no such mistake existed in his affidavit. It is clear to the court that this in no way constituted misconduct, came nowhere near outrageous government misconduct, and that defense counsel's assertions in this regard were themselves outrageous and unwarranted.

Fugitive "Myth"

Defense counsel strenuously argued that there was no cause to consider Dr. Bhandary a flight risk or a fugitive. They based this argument on the fact that for every day Dr. Bhandary was out of the country, he had a return date booked (although that date changed at least once while he was gone), and he voluntarily returned to the United States after his indictment. Defense counsel faulted Puckett's affidavit in this regard, as well as an affidavit for the forfeiture of Dr. Bhandary's home made by DEA Investigator Lawson which stated: "To date, Investigators have been unable to locate Dr. Bhandary and suspect he has fled to

8

his country of origin and place of birth, India. Amar Nath Bhandary, M.D., is a fugitive" [Def. Ex. #29]. At the hearing, counsel argued that there was no evidence Dr. Bhandary was a fugitive and that the government's actions in this regard constituted misconduct. However, as the court recognized at the hearing, there was ample evidence to consider Dr. Bhandary a fugitive at that time,[4] and defense counsel's evidence did not reasonably suggest the contrary.

Wire Transfer

Another claim asserted by defense counsel regarding government misconduct involved certain alleged misrepresentations made by the government about Dr. Bhandary's attempted wire transfer before he left for India. At the arraignment hearing, government counsel Randy Sengel stated: "On January the 27th, [Dr. Bhandary] bought a ticket to India. On January the 28th, he attempted to wire transfer almost $40,000 from Chase Bank here in the United States to a bank in India that failed because the bank in India wasn't open" [Def.

---

[4]*The court held in a previous order denying Dr. Bhandary's request to amend the conditions of his release:*

> *Further, while the evidence as to defendant's actions in the period immediately preceding and following his indictment may be subject to multiple interpretations or other explanation, the court concludes it sufficiently supports the conclusion that defendant is a flight risk. The evidence is that defendant's then-counsel was advised on January 25, 2012, that indictment was imminent. Two days later, defendant quit claimed his property to his wife. The next day, he flew to India. Given the time sequence and the fact that defendant's new defense attorney was involved in the property transfers, his explanation of the transfers as "estate planning" is less than persuasive. Further, his presence in India lasted for approximately three months before he eventually commenced his return.*

*Doc. #34 at 2.*

Ex. #30 at 14:7-11]. Defense counsel asserted that this was a direct misrepresentation because the reason stated on the wire transfer request for declining the transfer was "Customer Request" [Def. Ex. #31 at 2]. However, the government countered this assertion by noting that a simple interview with the bank employees involved revealed that the bank in India was closed and that they had informed Dr. Bhandary the transfer would not go through until Monday. The employees entered "Customer Request" as the reason for decline because Dr. Bhandary decided to cancel the request when it was unable to go through at that time. Defense counsel did not dispute this.[5] It is clear to the court that the government made no misrepresentation and that the same evidence was available to defense attorneys before they made their assertion of wrongdoing.

Lies about Arrest

Much of the misconduct alleged by defense counsel revolves around Dr. Bhandary's arrest in Germany. Defense counsel in essence claimed that Dr. Bhandary was arrested in Germany at the request of the government, and that the government lied when it told the court that it asked German agents not to arrest Dr. Bhandary [*See, e.g.*, Doc. #39 at 3-4]. Counsel pointed in particular to the government's response to the emergency motion [Doc. #13] which stated, "When the defendant arrived at the airport in Frankfurt, Germany, [DEA Agents] were present. DEA Agents asked the German law enforcement authorities not to

---

[5]*Further, defense counsel did not dispute that Dr. Bhandary attempted the nearly $40,000 wire transfer in the first place, providing additional support for labeling Dr. Bhandary as a fugitive when he left the country, as discussed <u>supra</u>.*

10

arrest the defendant unless he attempted to leave the airport so that he could more conveniently be arrested in the United States. German authorities, however, arrested the defendant" [Def. Ex. #32 at 3-4]. Defense counsel stated, "**This misrepresentation is contrary to the evidence.** As evidenced herein, it was the Government . . . that spoilated their own indictment, lied to the Germans to get Dr. Bhandary arrested in Germany, concealed that fact from US Courts, and then lied to US Federal Courts on the issue of how a US Citizen, returning voluntarily to the US, after advertizing his return to Messrs Coats and Sengel, could indeed get arrested in Germany" [Doc. #39 at 5-6 (emphasis in original)].

This argument is borderline incoherent. It appears that defense counsel interpreted the government's statement to mean that they had no intent to arrest Dr. Bhandary and that the Germans must have acted on their own accord to do so. When defense counsel realized that the government had issued an extradition request, counsel somehow took that to mean that the government had lied when stating it tried to prevent Dr. Bhandary's arrest in Germany.[6] The government responded that it was well known that there was an outstanding valid warrant for Dr. Bhandary's arrest; defense counsel were aware the government considered Dr. Bhandary a flight risk; and the government refused to withdraw the arrest warrant because of the risk Dr. Bhandary would change his mind and flee. As the

---

[6]*Counsel's actual accusations warrant notation: "Any information or statement by the Government that DEA agents in Germany must have tried 'to prevent the arrest of Dr. Bhandary' **is a LIE**, ignores the attached written evidence presented to the contrary, and is a patent misrepresentation on the actual circumstances leading to the arrest and imprisonment of Dr. Bhandary in Germany" [Doc. #39 at 9 (emphasis in original)].*

11

government stated, "The government willfully arrests every defendant for whom a warrant has been issued" [Doc. #52 at 3-4]. Defense counsel somehow took this assertion as an admission by the government that they had previously mislead the court [*See* Doc. #63 at 8]. Defense counsel reasserted this argument at the hearing.

The court found absolutely no misconduct in this interaction and finds defense counsel's assertions in this regard preposterous. Clearly, the government had an outstanding warrant for Dr. Bhandary's arrest. Clearly, the government used the extradition process to carry out that arrest based upon its belief that Dr. Bhandary had fled the country.[7] The court is not at all troubled by the fact that the government may have preferred to arrest Dr. Bhandary on United States soil to save time and expenses, but that German authorities nonetheless carried out the outstanding extradition request on German soil.

Defense counsel made additional outrageous statements regarding the extradition. In the arraignment proceeding conducted by Magistrate Judge Bacharach, the judge noted that he considered several factors in his decision to impose home detention, including: "defendant's resources, combined with the circumstances involving his earlier departure from the country, and the problems in getting him back in the United States" [Doc. #25 at 22:12-

---

[7]*In fact, defense counsel submitted several letters by counsel as evidence at the January 3, 2013, hearing. Counsel Daniel Gamino, in letters dated April 27, 2012, and May 4, 2012, requested the government to release the "International Arrest Warrant" so that Dr. Bhandary could return [Def. Ex. #37]. It is clear that counsel was fully aware of the outstanding arrest warrant and the ongoing extradition process. It is not clear what possible basis defense counsel could even remotely consider to support a charge of misconduct for this international arrest. Certainly no one believes that German authorities "accidentally" arrested Dr. Bhandary, nor does any evidence support counsel's argument that the government made such an assertion [See Doc. #39 at 10].*

12

15]. Defense counsel claimed that when Judge Bacharach "blamed Dr. Bhandary" for the problems in getting him back to this country, and Mr. Sengel remained mute, "*Mr. Sengel obstructed justice*, and caused a federal proceeding to take a course that was to be based on untruths" [Doc. #39 at 13 (emphasis in original)]. Counsel asserted that this was a "giant misrepresentation" at the hearing, apparently based on the fact that it was the government that had Dr. Bhandary arrested and set in motion the extradition process. There was no misrepresentation, "giant" or otherwise. Dr. Bhandary was arrested on an outstanding warrant and ultimately extradited from Germany. There was no misrepresentation as to the pertinent facts.

## Conclusion

The accusations made by these defense attorneys were extreme and outrageous. Most had absolutely no basis in the evidence presented, or even worse, were flatly contradicted by the evidence. The allegations of governmental misconduct came nowhere close to supporting the type of "egregious" conduct necessary to establish that defense. There was no reasonable basis for the outrageous claims made by defense counsel in this case. The court concludes that, in making such claims, counsel's conduct was unprofessional and sufficiently so that formal discipline is appropriate.

Defense counsel David P. Henry and Daniel J. Gamino are hereby publicly **REPRIMANDED** for their unprofessional conduct in this case. The Clerk of Court is directed to provide a copy of this order to each District Judge of this court, to each Magistrate Judge of this court, and to the Federal Public Defender.

**IT IS SO ORDERED**.

Dated this 29th day of October, 2013.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE